IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Bronco Trucking, LLC | § | |
| | § | Case No. 24-51118 |
| Debtor | § | SubChapter V |

### SECOND AMENDED PLAN OF REORGANIZATION OF DEBTOR AND DEBTOR-IN POSSESSION, BRONCO TRUCKING, LLC

The Second Amended Plan (as defined herein) of Debtor and Debtor-in Possession, Bronco Trucking, LLC, ("***Debtor***" or "***Bronco***"), is as follows:

**A.    Overview of the Plan**

The purpose of the Plan is to reorganize the Debtor by putting the Reorganized Debtor on stronger financial footing to reassure its vendors, customers, employees, and stakeholders of the long-term viability of the Debtor.  The Debtor has been working with its various professionals, including its financial advisor, to prepare for a Subchapter V bankruptcy Plan filing.  The Debtor has prepared financial projections that it believes are reasonably achievable based on its current circumstances and intends to devote its net disposable income for five years to pay an approximate 17.5 to 21.90% dividend to the allowed general unsecured creditors. Debtor has come to agreements with its secured equipment lenders regarding plan treatment on retained equipment as provided herein..  The existing equity holders are deemed unimpaired.   The ultimate dividend to unsecured creditors will not be determined until the payments to secured creditors are finalized as discussed in Article IV below.  Exhibit "B" is Debtor's draft proforma.  Generally, this Second Amended Plan contains the following changes.

      a.     Deletes paragraph 8.06

      b.     Deletes the last sentence of paragraph 7.03

      c.     A new paragraph 9.03.4 is added and 13.04 modified regarding duration of certain injunctions

      d.     Modifies paragraph 3.05 to account for if the Plan is confirmed as a non-consensual plan.

      e.     Modifies Plan treatment for Balboa Capital in Class 3.

      f.     Corrects the Class 6 title in paragraph 2.06 and modifies the First Citizen Class 6 Plan treatment.

g.      Modifies the process in paragraphs 4.02 and 4.03 regarding unsecured equipment lender collection and disposal of repossessed assets and voting estimated claims and deletes paragraph 4.04 as moot.

## B.      Description and History of the Debtor's Business

After spending 20 years in the missionary fields, Luis Poblete and his wife Eva Mullen returned to the U.S. where Luis obtained his CDL license to become a truck driver in about 2004. Luis drove for larger well-known companies for several years and then became an owner operator working for Parkway/HEB.   Luis and Eva then began buying more trucks and growing their business until 2015 when they obtained their own FMCSA license.   They did very well through Covid being encouraged by customers to put even more trucks on the road to help with the then shortage of trucks hauling food for large grocery chains during Covid.

The market for trucking began to turn in about 2022 shortly after the Ukraine war with Russia began.  Fuel prices began growing to records  highs but shipping rates lagged behind because there were fewer and fewer loads  in the market being chased by the huge influx of carriers after the big Covid  surge.  In first quarter of 2024, the US still showed an additional  94,000 carriers  more than prior to Covid.

While this problem  slowly  began  two years  ago,  other than  a few reefer upgrades  to prevent claims due to repairs, Debtor had saved most of the profits made during the Covid surge to protect Bronco  Trucking and provide a financial buffer.  Hence, up until recently, Debtor continued  to keep its loans,  equipment,  insurance,  and taxes current while waiting for the market to  turnaround.  Debtor also maintained  flexibility  in its operations,  using both the dedicated freight and the spot market to keep the trucks  rolling. However, the buffer has finally ran out and Debtor has reached  the point where it needed to restructure its debt in order to continue.

The shipping market has not improved during the bankruptcy and arguable the country  is heading  into a recession.    While Debtor  hoped to be able to simply restructure its debts over time, Debtor has found it will need to reduce its principal balances on its equipment debt in order to continue in operation and propose a feasible plan.

## C.      Purpose of the Bankruptcy

Bronco wisely held onto cash as long as possible prior to the bankruptcy filing in the hope that it could support its operations while waiting for the shipping market to turn.   Unfortunately, the market did not turn positive and Debtor was forced to file this bankruptcy because it was eventually going to be unable to service its debt.  Debtor filed for bankruptcy protection to allow for it to sell unused and underutilized equipment and reorganize its overall debt load to allow it to continue operating into the future.

## D.      Liquidation Analysis

To confirm the Plan, the Bankruptcy Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and

equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit "A" and incorporated herein for all purposes. Debtor's plan proposes to pay 17.5 to 21.90% of the unsecured claims out of five years of net disposable income and cash on hand in quarterly payments to the holders of allowed general unsecured claims.  If Bronco were liquidated, there would be minimal funds available for distribution to unsecured creditors, the vendors would be unpaid, all employees would be let go and the company would be lost.  Debtor estimates that if it liquidated, unsecured creditors would only receive a 8.45 to 13.7% dividend because on liquidation, the equipment Debtor is retaining would then be liquidated at an amount far less than Debtor shall pay over time with interest causing a large increase to the unsecured class.

**E.       Ability to make future plan payments and operate without further reorganization**

Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan Payments and to support its business. Debtor has provided detailed projected financial information attached hereto as Exhibit "B" and incorporated herein for all purposes.

The final Plan Payment is expected to be paid on or before the fifth anniversary following the date that the first payment is due under the Plan.

As with any financial projections, there is a degree of uncertainty related to the projections attached hereto. Debtor has used its best efforts to project its disposable income and future business performance. However, factors beyond its control could adversely affect these projections. This could lead to Debtor having to modify this Plan to account for such adverse effects.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**ARTICLE I.**
**SUMMARY**

This Plan of Reorganization under Chapter 11 of the Bankruptcy Code proposes to pay the Allowed Claims of the Debtor out of cash flow from operations.

This Plan provides for:

| |
|---|
| Seven Classes of Secured Claims. |
| One Class of General Unsecured Claims. |
| One Class of Equity Holder Interests |

There are no Allowed Claims entitled to priority under § 507(a) of the Code that require classification under § 1123(a)(1) of the Code.  Non-priority unsecured creditors holding Allowed Claims will receive distributions of the net disposable income, based on the financial projections which the proponent of this Plan believes will result in total net disposable income of

approximately $133,000.  Debtor contends 17.5 to 21.90% of the unsecured claims shall be paid over the five year period, largely due to Debtor having retained cash, which will allow debtor to initiate payments before there is disposable monthly income.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.  **Claimants' rights may be affected.  Each claimant should read these papers carefully and discuss them with their attorney, if they have one.  If a claimant does not have an attorney, they may wish to consult one.**

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

**Classified Claims:**

| Class | Description | Impaired? | Voting? |
|---|---|---|---|
| 2.01.  Class 1. | Secured Claim of SBA | Y | Y |
| 2.02.  Class 2. | Secured Claim of Celtic Bank Corp. | Y | Y |
| 2.03.  Class 3. | Secured Claims of Balboa Capital Corp. | Y | Y |
| 2.04.  Class 4. | Secured Claims of BMO Bank, NA. | Y | Y |
| 2.05.  Class 5. | Secured Claims of Daimler Truck Financial Svcs., USA LLC. | Y | Y |
| 2.06.  Class 6. | Secured Claims of First Citizens Bank And Trust | Y | Y |
| 2.07.  Class 7. | Secured Claims of U.S. Bank NA | Y | Y |
| 2.08.  Class 8. | General Unsecured Creditors | Y | Y |
| 2.09.  Class 9. | Equity Holders | Y | N |

## ARTICLE III.
## TREATMENT OF ADMINISTRATIVE EXPENSES,
## PRIORITY TAX CLAIMS, AND COURT FEES

**3.01.    Unclassified claims.** Under  §  1123(a)(1),  administrative  expense  claims  and Priority Tax Claims are not in classes.

**3.02.    Administrative expense claims.**  Although not classified, the Professionals who have provided services to the Debtor during the pendency of this Chapter 11 case are entitled to administrative claim treatment.  These claims do not include other administrative priority claims allowed under 11 U.S.C. § 503.  Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a), but to the extent they may not be paid in the ordinary course of business, they are listed here.  The following professional fees are the fees estimated to have accrued prior to confirmation of Debtor's bankruptcy case and shall be paid within 60 days of the Effective Date unless Debtor enters into other arrangements with the Professional:

The Smeberg Law Firm PLLC (Attorneys)          $50,000

SubChapter V Trustee                                          $12,000

4

Angelo DeCaro (Financial Services)                    $20,000

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 Case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 Case. Any other allowed costs and expenses of administration of the Debtor's Chapter 11 Case will also be entitled to administrative treatment. The anticipated administrative expenses of the Debtor is moderate for a case of this size and complexity.

**3.03.   Priority tax claims.** Each Holder of a Priority Tax Claim will be paid, consistent with § 1129(a)(9)(C) of the Code, as follows:

a.   Debtor does not anticipate taxes owed to the Internal Revenue Service ("***IRS***"); however, if taxes are owed to the IRS as of the Confirmation Date, then the amounts owed shall be either paid on the Effective Date or amortized over 60 monthly installments at the IRS interest rate applicable on the Confirmation Date. The first payment shall be made on the 15th day of the first month following the Effective Date.

b.   The Massachusetts Department of Revenue filed claim 9 for $4384.53, of which it claimed $3686.85 as a priority tax claim. Debtor disputes this claim. To the extent the claim is allowed, then the amounts owed shall be either paid on the Effective Date or amortized over 60 monthly installments at the Massachusetts Department of Revenue interest rate applicable on the Confirmation Date. The first payment shall be made on the 15th day of the first month following the Effective Date.

c.   The Texas Comptroller filed claim 17 for $1584.40, of which it claimed $1584.40 as a priority tax claim. To the extent the claim is allowed, then the amounts owed shall be either paid on the Effective Date or amortized over 60 monthly installments at the Texas Comptroller interest rate applicable on the Confirmation Date. The first payment shall be made on the 15th day of the first month following the Effective Date.

d.   Debtor does not anticipate personal property taxes owed to any taxing authority; however, if taxes are owed to any taxing authority for personal property taxes as of the Confirmation Date, then the amounts owed shall be either paid on the Effective Date or amortized over 60 monthly installments at 12% interest. The first payment shall be made on the 15th day of the first month following the Effective Date.

**3.04.   Statutory fees.** All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date.

**3.05.   Post-Effective Date Fees and Expenses.** Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and

expenses related to implementation of the Plan and consummation incurred on or after the Effective Date by the Professionals. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court. Notwithstanding this paragraph 3.05, if Debtor's plan is confirmed pursuant to 11 U.S.C. §1191(b) as a nonconsensual Plan, then all attorney fees and fees of the SubChapter V trustee incurred prior to administratively closing the case shall only be paid after notice and hearing or after 21 day negative notice without objection.

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01**.    **General Treatment of Secured Classes 3-7**.   Classes 3-7 consist of the secured claims over Debtor's personal property in which the Debtor is retaining all or a portion of the creditor's collateral (the "Secured Equipment Creditors").  Debtor does not contest the loan documents of any Secured Equipment Creditors or that each respective creditor has a secured interest in its respective collateral.

**4.02**.    **Treatment of Surrendered Equipment Lenders.**

a.  All of the equipment secured by the liens of Amur Equipment Finance, Inc./Midland Equipment Finance, Huntington National Bank, Everbank N.A., and Falcon Bank is being surrendered to the respective lender..   The equipment to be surrendered is listed on Exhibit C.

b.  To the extent the lenders related to the equipment on Exhibit C have not repossessed their equipment prior to the date the confirmation order is entered, the lenders shall take possession of their equipment within 90 days after the confirmation order entry date. **Debtor will only maintain insurance on the equipment being surrendered for the earlier of 90 days following the confirmation order entry date or the date the equipment is collected by the lender.**

c.  **Lenders shall have until 270 days following the Plan Effective Date to dispose of the repossessed equipment and amend their filed claims with the Court to account for the disposed equipment.  If a Creditor fails to file a claim related to their repossessed collateral, then the Reorganized Debtor shall have the right to reduce the claim by the fair market value of the equipment as determined by Debtor's appraiser, which shall be  sent via certified mail to the creditor at its address for payment listed in its proof of claim on file with the Court ("Notice of Reduced Claim")**.  Notwithstanding this paragraph 4.02(c), creditors shall have 15 days following the date the Notice of Reduced Claim is mailed to file an objection with the Court to the reduction.  Furthermore, nothing in paragraphs 4.02-4.03 shall be construed to allow Debtor or any party in interest to reduce the agreed secured claims in Classes 3 through 7 without the applicable Creditor's written consent.

**4.03**    **Deficiency Claims Related to Equipment Lenders.**

The unsecured portion of all secured equipment lender claims shall be treated in Class 8 General Unsecured Creditors. Equipment lenders with unsecured claims shall be entitled to vote on the Debtor's plan as a Class 8 claimant by estimating their own claims. The estimation is only valid for the purpose of voting on the Plan and 1) the Debtor maintains the right to object to any valuation it believes is unreasonable and 2) request the Court value the claim as part of the confirmation hearing or in a separate proceeding.

a.

### 4.04. Specific Treatment of Claims:

| Class | Description | Treatment |
|-------|-------------|-----------|
| 1 | Secured Claim of the SBA | The Class 1 Claim consists of the Secured Claim of the Small Business Administration ("**SBA**") (the "**SBA Obligations**") pursuant to UCC Filing 21-0002212040 (the "**SBA Loan**"). On the Effective Date, the loan shall be reinstated with all interest accruing until the first payment date stated below. Bronco will make monthly payments on the 1st day of each month in accordance with the loan documents, with the first payment being due on the 1st day of June 2025. Additionally, as shown on Exhibit B, Debtor shall pay all accumulated arrearages owed in 53 equal monthly installments with the first payment due on June 1, 2025.<br><br>The SBA shall retain all of its existing liens over Debtor's assets in the same order and priority that existed on the date of the Bankruptcy Case Filing.<br><br>The Class 1 Claim is impaired under the Plan and shall vote on the Plan. |
| 2 | Secured Claim of Celtic Bank Corp. | The Class 2 Claim consists of the secured Claim of Celtic Bank Corp. by a pre-petition blanket lien (the "**Celtic Collateral**").<br><br>On the Effective Date, the entire allowed Celtic Bank Corp. claim, including but not limited to principal and interest, shall be amortized over 60 months at 9% in 59 equal monthly payments of $2286 with a final 60th payment of all remaining amounts due under the claim. Bronco shall make the monthly payments on the 1st day of each month with the first payment due on the 1st day of the first calendar month following the Effective Date. |

| | | Celtic shall retain all of its liens in the Celtic Collateral until it has received all 60 payments under this Plan. Except as modified by the Plan, the Celtic loan documents shall govern. |
|---|---|---|
| | | The Class 2 Claim is deemed to be impaired under the Plan and shall be entitled to vote on the Plan. |
| 3. | Class 3 Claim of Balboa Capital Corp. | The Class 3 Claims consists of the Balboa Capital Corp. ("**BALBOA**") Claim filed as claim 23 in the Claims Register and secured by pre-petition liens over the following collateral, that is being retained by the Debtor (the "***BALBOA Collateral"):*** |
| | | 2015 Chevy Truck with VIN B1GC1KUEG6FF542477 |
| | | 2017 Peterbilt Truck with VIN 1NPBGGGGX0D455651 |
| | | Balboa shall receive the treatment stated in paragraphs 4.01-4.03 above and |
| | | On the Effective Date, the total allowed secured Balboa claim shall be reduced to $15609 for the 2015 truck and $56946 for the 2017 Peterbilt (which account for adequate assurance payments made and to be made by Debtor in the amount of $109 and $509 respectively monthly through the December 15, 2024, payment), (the "Allowed Secured Balboa Claim"). The Allowed Secured BALBOA Claim for the 2015 Truck shall be amortized over 60 months at 9.0% interest at monthly payments of $324 and for the 2017 Peterbilt amortized over 60 months at 7.5% interest at monthly payments of $1141. Debtor shall make 59 combined monthly payments of $1465 to BALBOA with the first payment due on the 5th day of January 2025, and then continuing on the 5th day of each month with remaining principal and interest due in the 60th month. |
| | | BALBOA shall retain all of its existing liens over the BALBOA Collateral in the same order and priority that existed on the date of the Bankruptcy Case Filing until the entire Allowed Secured BALBOA Claim is paid in full. Upon Debtor paying the entire Allowed Secured BALBOA Claim, BALBOA shall release its liens over the BALBOA Collateral. Except as modified by the Plan, the BALBOA loan documents shall govern. |

| | | |
|---|---|---|
| | | Class 3 Claim is deemed to be impaired under the Plan and shall be entitled to vote on the Plan. |
| 4 | Secured Claim of BMO Bank, NA. | The Class 4 Claims consists of the BMO Bank, NA. ("**BMO**") Claims filed as claims 1, 2, 3, 4, 5, and 6 in the Claims Register and secured by pre-petition liens over the following collateral, that is being retained by the Debtor (the "***BMO Collateral***"): |

| 2019 | CASCADIA | 3ALXGF002KDKN7849 |
|---|---|---|
| 2020 | Reefers | 3UTVS2533L8892812<br>3UTVS2535L8892813 |
| 2020 | Reefer | 3UTVS2534L8011017 |
| 2020 | Reefer | 3UTVS2534L8892723 |
| 2022 | Reefers | 3UTVS2537N8514429<br>3UTVS2533N8514430<br>3UTVS2536N8617311<br>3UTVS253XN8747513<br>3UTVS2531N8747514 |

BMO shall receive the treatment stated in paragraphs 4.01-4.03 above and

On the Effective Date, the total allowed secured BMO claim shall be reduced to $422,155 (which accounts for adequate assurance payments made and to be made by Debtor in the amount of $3804 through the December 15, 2024, payment), (the "Allowed Secured BMO Claim"). The Allowed Secured BMO Claim shall be amortized over 60 months at 7.5% interest.  Debtor shall make 59 monthly payments of $8,484 to BMO with the first payment due on the 5th day of January 2025, and then continuing on the 5th day of each month with remaining principal and interest be due in the 60th month.

BMO shall retain all of its existing liens over the BMO Collateral in the same order and priority that existed on the date of the Bankruptcy Case Filing until the entire Allowed Secured BMO Claim is paid in full. Upon Debtor paying the entire Allowed Secured BMO Claim, BMO shall release its liens over the BMO Collateral. Except as modified by the Plan, the BMO loan documents shall govern.

| | | |
|---|---|---|
| | | The Class 4 Claim is deemed to be impaired under the Plan and shall be entitled to vote on the Plan. |
| 5 | Secured Claim of Daimler Truck Financial Svcs. | The Class 5 Claims consists of the Daimler Truck Financial Svcs., USA LLC. ("***DAIMLER***") Claim filed as claim 12 in the Claims Register and secured by pre-petition liens over the following collateral, that is being retained by the Debtor (the "***DAIMLER Collateral")***:<br><br>*(see table below)*<br><br>DAIMLER shall receive the treatment stated in paragraphs 4.01-4.03 above and<br><br>On the Effective Date, the total allowed secured DAIMLER claim shall be reduced to $201,960.00, (the "Allowed Secured DAIMLER Claim"). The Allowed Secured DAIMLER Claim shall be amortized over 60 months at 9% interest. Debtor shall make 59 monthly payments $4,192.36 to DAIMLER with the first payment due on the 1st day of the first calendar month following the Effective Date and then all remaining principal and interest shall be due in the 60th month. All adequate protection payments made after September 1, 2024, shall be applied to the first of these 60 monthly payments. If the total adequate protection payment amount exceeds one full monthly payment, then the adequate assurance shall be applied to sequential payments until fully applied.<br><br>DAIMLER shall retain all of its existing liens over the DAIMLER Collateral in the same order and priority that existed on the date of the Bankruptcy Case Filing until the entire Allowed Secured DAIMLER Claim is paid in full. Upon Debtor paying the entire Allowed Secured DAIMLER Claim, DAIMLER shall release its liens over the DAIMLER Collateral. Except as modified by the Plan, the DAIMLER loan documents shall govern.<br><br>The Class 5 Claim is deemed to be impaired under the Plan and shall be entitled to vote on the Plan. |

Table within Class 5:

| 2020 | Freightliner | CASCADIA | 3ALXGF001LDLW5638 |
|------|--------------|----------|-------------------|
| 2020 | Freightliner | CASCADIA | 3ALXGF003LDLW5639 |
| 2020 | Freightliner | CASCADIA | 3ALXGF008LDLW5670 |
| 2020 | Freightliner | CASCADIA | 3ALXGF00XLDLW5671 |

| 6 | Secured Claim of First Citizens Bank & Trust | The Class 6 Claims consists of the First Citizens Bank & Trust ("*FIRST CITIZENS*") Claim filed as claims 7, 8, 11 in the Claims Register and secured by pre-petition liens over the following collateral, that is being retained by the Debtor D (the "*FIRST CITIZENS Collateral")*:<br><br><table><tr><td>2016</td><td>CASCADIA</td><td>3ALXA7005GDGX7011</td></tr><tr><td>2016<br>2020</td><td>CASCADIA TRUCK<br>REEFER TRAILER</td><td>3ALXA700XGDGX6761<br>3UTVS2537L8892814</td></tr><tr><td>2016</td><td>CORONADO</td><td>3ALXFB006GDGX6289</td></tr></table><br>First Citizens shall receive the treatment stated in paragraphs 4.01-4.03 above and<br><br>On the Effective Date, the total allowed secured FIRST CITIZENS claim shall be reduced to $112,248, which accounts for adequate assurance payments made through October 1, 2024, in the amount of $2295, and then further reduced by each $2600 adequate protection payment made after October 1, 2024. (The "Allowed Secured FIRST CITIZENS Claim"). The Allowed Secured FIRST CITIZENS Claim shall be amortized over 60 months at 7.5% interest. Debtor shall make monthly payments of $2600 to FIRST CITIZENS with the first payment due on the 15th day of January 2025, and then continuing on the 5th day of each month with remaining principal and interest due in the 60th month.<br><br>FIRST CITIZENS shall retain all of its existing liens over the FIRST CITIZENS Collateral in the same order and priority that existed on the date of the Bankruptcy Case Filing until the entire Allowed Secured FIRST CITIZENS Claim is paid in full. Upon Debtor paying the entire Allowed Secured FIRST CITIZENS Claim, FIRST CITIZENS shall release its liens over the FIRST CITIZENS Collateral. Except as modified by the Plan, the FIRST CITIZENS loan documents shall govern.<br><br>The Class 6 Claim is deemed to be impaired under the Plan and shall be entitled to vote on the Plan. |
| 7 | Secured Claim of U.S. Bank NA | The Class 7 Claims consists of the U.S. Bank NA ("*U.S. BANK*") Claim filed as claim 16 in the Claims Register and |

secured by pre-petition liens over the following collateral, that is being retained by the Debtor(the "***U.S. BANK Collateral***"):

| 2021 | Trailer / Reefer | 3UTVS253XM8242604 |
| 2016 | COLUMBIA | 3ALXA7CG8GDGT8650 |
| 2017 | CORONADO | 3ALXFB000HDJD0193 |

U.S. Bank shall receive the treatment stated in paragraphs 4.01-4.03 above and

On the Effective Date, the total allowed secured U.S. BANK claim shall be reduced to $104,370 (which accounts for adequate assurance payments made and to be made by Debtor in the amount of $778 monthly through the December 15, 2024, payment), (the "Allowed Secured U.S. BANK Claim"). The Allowed Secured U.S. BANK Claim shall be amortized over 60 months at 9.0% interest. Debtor shall make 59 monthly payments of $2167 to U.S. BANK with the first payment due on the 5th day of January 2025, and then continuing on the 5th day of each month with remaining principal and interest due in the 60th month.

U.S. BANK shall retain all of its existing liens over the U.S. BANK Collateral in the same order and priority that existed on the date of the Bankruptcy Case Filing until the entire Allowed Secured U.S. BANK Claim is paid in full. Upon Debtor paying the entire Allowed Secured U.S. BANK Claim, U.S. BANK shall release its liens over the U.S. BANK Collateral. Except as modified by the Plan, the U.S. BANK loan documents shall govern.

The Class 7 Claim is deemed to be impaired under the Plan and shall be entitled to vote on the Plan.

| 8 | Non-priority general unsecured creditors | The Class 8 Claims consist of the Holders of General Unsecured Claims which includes undisputed scheduled claims, allowed filed claims, and allowed deficiency secured equipment claims. Debtor shall pay the allowed Class 8 Claims their share of Debtor's disposable monthly income in 16 quarterly payments ("***Quarterly Payments***"). Payments shall be made to the Class 8 creditors pro rata in accordance with their allowed claims. |

| | | |
|---|---|---|
| | | The first quarterly payment shall be made on the 5th day of the first quarter 360 days following the Effective Date.  and continuing each quarter on the 5th day of the first month of the quarter until the final payment is made.<br><br>The Class 8 Claims are deemed to be impaired under the Plan and shall vote on the Plan to the extent a Class 8 Claim is not a Disputed Claim. |
| 9 | Equity Holders | On the Effective Date, all shares in the Reorganized Debtor shall revest with the holders of membership interests in the same number as they existed at the time of the Petition Date. Equity Holders are deemed unimpaired and not entitled to vote on the Plan. |

## ARTICLE V.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01.   Disputed Claim.** A Disputed Claim is a Claim that has not been Allowed or Disallowed by a final non-appealable order, and as to which either:

(i)      a proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection;

(ii)     no proof of Claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated;

(iii)    the Claim is listed in the statements or schedules as a Disputed Claim.

Disputed Claims shall not vote on the Plan.

**5.02.   Delay of distribution on a Disputed Claim.** No distribution will be made on account of a Disputed Claim unless such Claim is Allowed by a final non-appealable order.

**5.03.   Settlement of Disputed Claims.** Debtor will have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**5.04.   Deadline to file Claim Objections**.  Unless otherwise provided herein, all claim objections shall be filed within 60 days after the Effective Date.

## ARTICLE VI.
## PROVISIONS FOR EXECUTORY CONTRACTS,
## UNEXPIRED LEASES AND RETENTION OF ACTIONS

**6.01.    Assumed executory contracts and unexpired leases.** Assuming the lease of Truck Number 710 with VIN Number 3ALXA7005GDGX7011 with Rogelio Canto.

**6.02.    Rejected executory contracts and unexpired leases:** All remaining leases or executory contracts.

**6.03.    Claims Based upon Rejection of Executory Contracts or Unexpired Leases**. All Claims arising out of the rejection of executory contracts and unexpired leases must be filed with the Bankruptcy Court and served upon the Debtor and its counsel within thirty (30) days after the earlier of (a) the date of entry of an order of the Bankruptcy Court approving such rejection or (b) the Confirmation Date. Any such Claims not filed within such times shall be forever barred from assertion against the Debtor, its Estate, and property.

**6.04.    Reservation of Rights**.    Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is, in fact, an Executory Contract.

**6.05.    Retention of Causes of Action:**  Debtor retains all actions:

    a.  to avoid, set aside, or recover any payment or other transfer made to any party under Sections 547, 548, 549, and/or 550 of the Bankruptcy Code;

    b.  to avoid, set aside, or recover any payment or other transfer made to any party under any applicable State law(s);

    c.  to avoid or set aside any interest of a party in property under Section 544 of the Bankruptcy Code;

    d.  to collect any insider or non-insider loans or receivables;

    e.  to collect from any officer, director, shareholder, member, manager, or insider for breach of their duties to the Debtor or its creditors accruing pre- or post-bankruptcy filing;

    f.  for claims the estate has against insiders or third parties that accrued before the bankruptcy case filing date, during the bankruptcy, or after the case is confirmed.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.01.    Means for Funding the Plan.** The Plan will be funded through Debtor's continued operations and through the use of cash collateral. Debtor's continued operations should be

sufficient to enable the Reorganized Debtor to operate profitably as shown on Debtor's five year projection attached.

**7.02: Officers**. Debtor's sole managing member is Luis Poblete. Luis Poblete's salary post confirmation shall be $12,000 monthly. Eve Mullin shall receive an annual salary of 60,000. Poblete and Mullin may only receive annual increases to their salary only to extent all plan payments are made.

**7.03. Administrative Convenience**. Debtor may pay any Allowed Claim that is less than $2,000 in full after the Effective Date out of convenience for the Debtor. The holder of any allowed unsecured claim in excess of $2,000 may accept treatment as an Administrative Convenience claim by accepting $2,000 as payment in full of the allowed claim by indicating its acceptance on its ballot.

**7.04. General Settlement of Claims.** Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, which distributions and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims against the Debtor, including all controversies relating to the contractual, legal, and subordination rights that a holder of an Allowed Claim against the Debtor's estate may have with respect to such Allowed Claim or any distribution to be made on account of such Allowed Claim.

The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, and controversies, as well as a finding by the Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and holders of Claims and is fair, equitable, and reasonable.

**ARTICLE VIII.**
**GENERAL PROVISIONS**

**8.01. Definitions and rules of construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan and supplemented by the following definitions:

**8.01.1** *Administrative Claim* shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtor's estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the

case, compensation for legal and other services and reimbursement of expenses. Administrative Claim shall include any claim allowed or awarded under Bankruptcy Code Sections 330(a) or 331, and all fees and charges assessed against the estate of the Debtor under title 28 of the United States Code.

**8.01.2** *Administrative Expense Bar Date* means the date that is fourteen (14) calendar days after the Confirmation Hearing.

**8.01.3** *Affiliate* shall have the meaning set forth in Section 101(d) of the Bankruptcy Code.

**8.01.4** *Allowed Claim or Allowed Interest* shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending, or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Tax Claim as the context provides.

**8.01.5** *Ballot* means the form(s) distributed to holders of Claims entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

**8.01.6** *Bankruptcy Code* shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq*., as it existed on the Filing Date.

**8.01.7** *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Western District of Texas, Austin Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

**8.01.8** *Bankruptcy Estate* shall mean all of the assets owned by the Debtor and its estate.

**8.01.9** *Cash* shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

**8.01.10** *Causes of Action* means any and all of the Debtor's or the Debtor's Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise. A Cause of Action shall not, under any circumstances, be waived as a result of the failure to describe such Cause of Action with specificity in the Plan.

**8.01.11** *Chapter 11 Case* means the case pending for that Debtor pursuant to chapter 11 of the Bankruptcy Code in the Court.

**8.01.12** *Claim* shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

**8.01.13** *Class* shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

**8.01.14** *Confirmation Date* shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

**8.01.15** *Confirmation Hearing* shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

**8.01.16** *Confirmation Order* shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**8.01.17** *Convenience Claim* shall mean any General Unsecured Claim that is Allowed in an amount of two thousand dollars ($2,000) or less; provided, however that (1) any Claim that was Allowed in excess of two thousand dollars ($2,000) may not be subdivided into multiple Claims of two thousand dollars ($2,000) or less for purposes of receiving treatment as a Convenience Claim, and (2) Claims in the same Class held by a Claimant shall be aggregated for purposes of determining whether such Claims are eligible to be Convenience Claims.

**8.01.18** *Creditor* shall mean any Person holding a Claim.

**8.01.19** *Debtor* shall have the meaning set forth in the preamble to the Plan.

**8.01.20** *Disbursing Agent* shall mean the Debtor or the Subchapter V Trustee.

**8.01.21** *Disallowed Claim* shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

**8.01.22** *Disputed Claim* shall mean that portion (including, where appropriate, the whole) or any Claim (other than an Allowed Claim) that (a) is listed in Debtor's schedules of liabilities as disputed, contingent, or unliquidated, or listed in this Plan as disputed; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtor's schedules

of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

**8.01.23**   ***Effective Date*** the Effective Date of the Plan shall be the later of January 2, 2025, or the date the confirmation order becomes final and not appealable, which is typically 14 days after the Court signs the Confirmation Order as long as no one files 1) a motion for rehearing/new trial or 2) a notice of appeal. Other issues that could affect the Effective Date are the filing of a motion to file or amend a claim, the filing of an adversary action or the filing of a counterclaim to a claim objection.

**8.01.24**   ***Enjoined Party*** means (i) any Person who has held, holds, or may hold a Claim against the Estate (whether or not proof of such Claim has been filed and whether or not such Person votes in favor of, against or abstains from voting on the Plan or is presumed to have accepted or deemed to have rejected the Plan), (ii) any Person that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Person appeared in the Chapter 11 Case, (iii) any Person that was an Insider of the Debtor on or before the Filing Date under Section 101(31) of the Bankruptcy Code, including, without limitation, any Person that was a non-statutory Insider, (v) any Person that, after the Effective Date, is an Insider or Affiliate of the Debtor, and (vi) the Related Persons of each of the foregoing but in all cases excluding the United States Trustee.

**8.01.25**   ***Estate*** means the estate of the Debtor in the Chapter 11 Case, as created pursuant to section 541 of the Bankruptcy Code.

**8.01.26**   ***Exculpated Party*** means the Debtor.

**8.01.27**   ***Executory Contracts*** shall mean any Pre-Petition Unexpired Lease(s) or executory contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

**8.01.28**   ***Filing Date*** shall mean June 17, 2024, the date Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

**8.01.29**   ***Final Order*** shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

**8.01.30**   ***General Unsecured Claim*** shall mean either (i) a Claim that is not secured by a Lien, security interest or other charge against or interest in property in which Debtor has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a Claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Tax Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

**8.01.31**  *Governmental Unit* shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

**8.01.32**  *Holder* shall mean the owner or Holder of any Claim or Interest.

**8.01.33**  *Interest* shall mean an Interest scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) as reflected in the books and records of the Debtor as of the Petition Date.

**8.01.34**  *Insider* has the definition ascribed to it under the Bankruptcy Code.

**8.01.35**  *Legal Proceedings* means a proceeding before a tribunal constituted by law, including a court, an administrative body or commission, or an administrative law judge or hearing officer.

**8.01.36**  *Lien* shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

**8.01.37**  *Person* shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**8.01.38**  *Plan* shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

**8.01.39**  *Plan Payments* shall mean monthly or quarterly payments made by the Debtor.

**8.01.40**  *Plan Supplement* means the compilation of documents and forms of documents, all of which may be amended, modified, replaced and/or supplemented from time to time, to be filed with the Bankruptcy Court on or before the date that is seven (7) calendar days prior to the Confirmation Hearing. Any reference to the Plan Supplement in this Plan shall include each of the documents referenced therein.

**8.01.41**  *Pre-Petition Unexpired Lease(s)* shall mean any lease existing as of the Filing Date between the Debtor and any Entity or Person.

**8.01.42**  *Priority Tax Claim* shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

**8.01.43**  *Professional Fee Claim* means a Professional's Claim for compensation or reimbursement of costs and expenses pursuant to sections 327, 328, 330, 331, 503(b) (other than 503(b)(4)) or 1103 of the Bankruptcy Code for services rendered to the Debtor on and after the Filing Date, but before and including the Effective Date.

**8.01.44**  *Professionals* shall mean all professionals employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

**8.01.45**   ***Pro-Rata*** shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

**8.01.46**   ***Related Person*** means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

**8.01.47**   ***Reorganized Debtor*** shall mean the Debtor, from and after the Effective Date.

**8.01.48**   ***Secured Claim*** shall mean a claim secured by a Lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

**8.02**   **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.03**   **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.04**   **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.05**   **Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE IX.**
**DISCHARGE**

**9.01.   Discharge.**

**9.01.01**   If the Debtor's Plan is confirmed under § 1191(a) of the Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i)   imposed by this Plan; or

(ii)    to the extent provided in § 1141(d)(6).

9.01.02    If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i)    on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii)    excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**9.02.    Modification of the Plan.** Debtor may propose amendments or modifications to its Plan at any time prior to the date of the entry of the Confirmation Order, with leave of the Bankruptcy Court, and upon proper notice to the parties in interest.  After the date of the Confirmation Order, Debtor may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests or creditors, remedy any defects or omissions, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purpose and effect of this Plan.

**9.03.    Effect of Confirmation of the Plan**.

**9.03.1    Legally Binding Effect.**  The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all Holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, guaranty claims or any type of successor liability based on acts or omissions of the Debtor.

**9.03.2    Injunction.** The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtor and its assets and properties, and any proceedings not yet instituted against the Debtor or its assets, except as otherwise provided in the Plan.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtor are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or its property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or its property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtor or the property of the Debtor or the Estate with respect to any such Claim, and (e) asserting any right of setoff or recoupment against the Debtor or the Estate except as specifically permitted by § 553 of

the Bankruptcy Code.  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.

**9.03.3    Continuation of Anti-Discrimination Provisions of Bankruptcy Code**. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor, or another Person with whom the Debtor has been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

9.03.4    **Injunction Temporary Until Discharge Entered.**  The provisions of this Section 9.03 shall remain temporary until Debtor obtains its discharge by the terms of this Plan or by operation of law.   Upon Debtor receiving its discharge, the terms in this Section 9.03 shall be permanent.

# ARTICLE X.
## DEFAULT

**10.01.  Default.**   Upon default by the Reorganized Debtor, Creditors are required to provide written notice of such default to the Reorganized Debtor and Debtor's counsel, the Smeberg Law Firm, PLLC, by certified mail, return receipt requested, and by regular first class mail, and the Reorganized Debtor shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. If the Reorganized Debtor fails to cure within the thirty (30) day cure period provided herein, Creditors shall be allowed to foreclose their Liens without further notice of hearing before the Bankruptcy Court.  The Reorganized Debtor shall be entitled to three (3) notices of default for each calendar year.  On the fourth (4th) notice of default for a calendar year, Creditors shall be allowed to foreclose their Liens without further notice of hearing before the Bankruptcy Court or move to have the case converted to a case under Chapter 7.

**10.02.  Vesting of Estate Property and Effect of Default.**

If Debtor's plan is confirmed pursuant to 11 U.S.C. §1191(a) as a consensual Plan, then on the Effective Date, title to all assets, causes of action against Insiders and third parties, and properties dealt with by the Plan shall vest in Reorganized Debtor, free and clear of all Claims and Interests other than any contractual Secured Claims granted under any lending agreement, on the condition that Reorganized Debtor complies with the terms of the Plan, including the making of all Plan Payments to Creditors provided for in such Plan.  If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or

after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

If Debtor's plan is confirmed pursuant to 11 U.S.C. §1191(b) as a non consensual Plan, then the Debtor will not receive its discharge until its requirements under the Plan have been fully consummated, and all property of the Debtor shall not revest in the reorganized Debtor until the Plan is fully consummated and shall remain property of the estate under 11 U.S.C. §1186(c).

## ARTICLE XI.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

**11.01  Conditions to Confirmation**. It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived.

a.      The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtor.

b.      The Plan must be in form and substance acceptable to the Debtor.

c.      All documents necessary to implement the Plan must be in a form and substance acceptable to the Debtor.


**11.02  Conditions to Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied:

a.      The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance acceptable to the Debtor.

b.      All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

c.      No stay of the Confirmation Order shall be in effect.

**11.03  Waiver of Conditions**. Notwithstanding the foregoing, the Debtor reserves the right to waive the occurrence of the conditions precedent to the (a) Confirmation of the Plan and (b) Effective Date. Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the confirmation of this Plan and the occurrence of the Effective Date, the Bankruptcy Court shall

retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Case and this Plan, to the fullest extent permitted by law, including jurisdiction to:

 a. hear and determine any and all objections to the allowance of Claims;

 b. hear and determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

 c. hear and determine any and all motions to subordinate Claims at any time and on any basis permitted by applicable law;

 d. hear and determine all Administrative and Professional Fee Claims;

 e. hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any Claim or the liquidation of any Claims arising therefrom;

 f. hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

 g. enter such orders as may be necessary or appropriate in aid of the implementation hereof and to execute, implement, or consummate the provisions hereof and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, or the Confirmation Order;

 h. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and all contracts, instruments, and other agreements executed in connection with this Plan;

 i. hear and determine any request to modify this Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

 j. issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, or enforcement hereof or the Confirmation Order;

 k. enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

 l. hear and determine any matters arising in connection with or relating hereto, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, or the Confirmation Order;

m.      enforce all orders, judgments, injunctions, releases, exculpation, indemnification and rulings entered in connection with the Chapter 11 Case;

n.      recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

o.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

p.      hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge, if any;

q.      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

s.      enter a final decree closing the Chapter 11 Case.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

**13.01  Bar Date for Certain Claims**.

**13.01.01**.  **Administrative Claims**. The Confirmation Order shall establish an Administrative Expense Bar Date for the filing of all Administrative Claims (other than Administrative Claims paid in the ordinary course of business pursuant to Article 2 hereof and Claims for U.S. Trustee fees), which date shall be thirty (30) days after the Confirmation Hearing. Holders of such asserted Administrative Claims must file an application for payment of Administrative Claim with the Bankruptcy Court on or before such Administrative Expenses Bar Date or forever be barred from doing so. The notice of Confirmation shall set forth the Administrative Expenses Bar Date, and the Reorganized Debtor and any other party in interest, shall have ten (10) days following the Administrative Expenses Bar Date to review and object to such Administrative Claims. All such objections shall be litigated to Final Order; provided, however, that the Debtor may compromise and settle, withdraw or resolve by any other method, without requirement of Bankruptcy Court approval, any objections to Administrative Claims.

**13.01.02  Professional Fee Claims**. All final applications for Professional Fee Claims must be filed and served on the Debtor and its counsel no later than thirty (30) days after the Effective Date, reflecting fees and expenses incurred as of the end of the month preceding the date of the Confirmation Hearing, with an estimate for the fees and expenses incurred from the end of such month through the later of the Effective Date or the time period covered by such application. Objections to any such applications must be filed and served on the requesting Professional or other Entity, no later than ten (10) days (or such other period as may be allowed by order of the Bankruptcy Court or as otherwise agreed to between the parties) after the date on which the applicable application for compensation or reimbursement was served.

**13.02  Nonseverability of Plan Provisions**. If, prior to Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

**13.03  Successors and Assigns**. The rights, benefits and obligations of all Persons named or referred to herein shall be binding on, and shall inure to the benefit of, their respective heirs, executors, administrators, personal representatives, successors or assigns.

**13.04  Injunction**. Upon entry of the Confirmation Order, all Enjoined Parties are and shall be enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan while the Plan is being implemented.

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be enjoined, on and after the Effective Date, with respect to any Claims, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estate or the property of the Estate, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Estate or the property of the Estate, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Estate or the property of the Estate, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Estate or against property or interests in property of the Estate, except to the limited extent permitted under sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The injunctions set forth herein shall extend to and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Estate.

a.  <u>Duration of Injunctions and Stays</u>. Unless otherwise provided in the Plan, the Confirmation Order, or a separate order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise (excluding any injunctions or stays contained in the Plan or the Confirmation Order), and in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date or the date indicated in such applicable order.

b.      The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Case until the Effective Date, at which time the injunctions described in this Plan shall come into effect with no gap in time.

**13.05   Exculpation and Limitation of Liability**. To the maximum extent permitted by applicable law, the Exculpated Party will not have or incur, and the Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Filing Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan or any related agreements, instruments, or other documents, the solicitation of votes on the Plan; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); provided, however, the foregoing will not apply to any acts or omissions of the Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan protecting the Exculpated Party from liability.

**13.06   Retention of Causes of Action.** It is the intent of the Debtor and the Reorganized Debtor to retain and continue to prosecute any and all Causes of Action without limitation.

**13.07   Binding Effect**. Upon the occurrence of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Estate, all present and former Holders of Claims against the Debtor, its respective successors and assigns, including the Reorganized Debtor, all other parties-in-interest in the Chapter 11 Case (irrespective of whether such Claims are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property pursuant to the Plan, and any and all non-Debtor parties to Executory Contracts and Pre-Petition Unexpired Leases with the Debtor.

**13.08   Revocation, Withdrawal, or Non-Consummation**. The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans. If the Debtor revokes or withdraws this Plan, or if Confirmation or the Effective Date hereof does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise, not already approved by an order of the Court, embodied herein (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained herein, and no acts taken in preparation for the Effective Date, shall (x) constitute or be deemed to constitute a waiver, withdrawal, or release of any Claims by or against the Debtor or any other Entity, (y) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor, or (z) constitute an admission of any sort by the Debtor or any other Entity.

**13.09   Miscellaneous.** Closing the Estate - The Debtor may petition the court to close the Estate on or after the Effective Date, and upon substantial consummation of the Plan.

     **13.10  Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Texas shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of the Debtor shall govern corporate or other governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereof.

Dated: October 31, 2024

Respectfully submitted,

By: /s/ Luis Poblete_____
Luis Poblete, Manager
Bronco Trucking, LLC


By:     /s/ Ronald J. Smeberg
RONALD J. SMEBERG
State Bar No. 24033967
THE SMEBERG LAW FIRM, PLLC
4 Imperial Oaks
San Antonio, Texas 78248
210-695-6684 (Tel)
210-598-7357 (Fax)
ron@smeberg.com
ATTORNEY FOR THE DEBTOR

EXHIBIT A. LIQUIDATION ANALYSIS

Liquidation Analysis

| Assets | Scheduled Or Current | Estimated Liquidation Value | |
|---|---|---|---|
| | | Low | High |
| Cash Estimated as of  1/01/2025 | $ 470,000 | $ 500,000 | $ 500,000 |
| Accounts Receivable as of 1/01/2025 | 175,000 | 100,000 | 175,000 |
| Current Payables as of 1/01/2025 | (70,000) | (70,000) | (70,000) |
| Minus Secured Blanket Claims | (270,000) | (270,000) | (270,000) |
| Speculative Receivables | 20,000 | - | 5,000 |
| Net cash and receivables | **325,000** | **260,000** | **340,000** |
| | | | |
| Machinery & Eq & Other Fixed Assets | 2,800,000 | 900,000 | 1,300,000 |
| Other Assets | 11,350 | 0 | 2000 |
| Secured Claims Against Assets | (2,900,000) | (2,900,000) | (2,900,000) |
| **Net Fixed Assets after Secured Equipment Claims** | $ (88,650) | $ (2,000,000) | $ (1,598,000) |
| | | | |
| **Administrative Expenses:** | | | |
| Chapter V Professionals | | 40,000 | 60,000 |
| Subchapter V Trustee | | 10,000 | 15,000 |
| Priority Claims | | 6,000 | 6,000 |
| Other Professionals and Admin Expenses | | 20000 | 20000 |
| Chapter 7 Administrative Expenses. | | $15,000 | $20,000 |
| **Total Administrative Expenses** | | $ (91,000) | $ (121,000) |
| Net Cash and Receivables after Secured Blanket Claims | | $ 260,000 | $ 340,000 |
| **Available for Distribution To Unsecured Creditors** | | $ 169,000 | $ 219,000 |
| | | | |
| **Unsecured Creditor Claims After Liquidation of Assets** | | $ (2,000,000) | $ (1,598,000) |
| | | | |
| **Liquidation Percent Distribution to Unsecured Creditors** | | $ 8.45 | $ 13.70 |
| | | | |
| Distribution to Unsecured Creditors Under the Plan | | $350,000 | $350,000 |
| **Percent Distribution to Unsecured Creditors Under the Plan** | | **17.50%** | **21.90%** |

EXHIBIT — CALIFORNIA

| | 1Q25 | 2Q25 | 3Q25 | 4Q25 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | |
| Truck Leases | $10,000 | $10,000 | $10,000 | $10,000 | $42,800 | $44,512 | $46,292 | $48,144 |
| Trucking Services | $785,000 | $720,000 | $750,000 | $825,000 | $3,285,600 | $3,427,424 | $3,564,521 | $3,707,102 |
| Total Income | $795,000 | $730,000 | $760,000 | $835,000 | $3,338,400 | $3,471,956 | $3,610,813 | $3,755,246 |
| **Expenses** | | | | | | | | |
| Advertising/Promotional | $1,000 | $1,000 | $1,000 | $1,000 | $4,108 | $4,219 | $4,333 | $4,450 |
| Contractor Pay | $125,000 | $125,000 | $125,000 | $125,000 | $513,500 | $527,365 | $541,603 | $556,227 |
| CPA & Accounting | $150 | $150 | $150 | $150 | $616 | $633 | $650 | $667 |
| FUEL/DIESEL | $198,750 | $182,500 | $190,000 | $208,750 | $824,600 | $867,994 | $902,703 | $938,811 |
| Interest Expense | $3,000 | $3,250 | $3,250 | $3,250 | $13,094 | $13,448 | $13,811 | $14,184 |
| **INSURANCE** | | | | | | | | |
| Insurance | $45,000 | $45,000 | $45,000 | $45,000 | $184,860 | $188,851 | $194,977 | $200,242 |
| (Insider) | -$12,000 | -$12,000 | -$12,000 | -$12,000 | -$49,296 | -$50,627 | -$51,994 | -$53,398 |
| Total Insurance | $33,000 | $33,000 | $33,000 | $33,000 | $135,564 | $138,224 | $142,983 | $146,844 |
| **Insider Payroll** | | | | | | | | |
| (Insider) | $15,000 | $15,000 | $15,000 | $15,000 | $60,000 | $60,000 | $60,000 | $60,000 |
| (Insider) | $36,000 | $36,000 | $36,000 | $36,000 | $144,000 | $144,000 | $144,000 | $144,000 |
| Total Insider Payroll | $51,000 | $51,000 | $51,000 | $51,000 | $204,000 | $204,000 | $204,000 | $204,000 |
| Legal & Professional Fees | $60,000 | $500 | $500 | $500 | $2,000 | $2,054 | $2,109 | $2,166 |
| Sub Chapter 5 Trustee | $1,200 | $1,200 | $1,200 | $1,200 | $4,800 | $4,800 | $4,800 | $4,800 |
| Fees | $61,200 | $1,700 | $1,700 | $1,700 | $6,800 | $6,854 | $6,909 | $6,966 |
| Maintenance | $60,000 | $55,000 | $55,000 | $55,000 | $231,075 | $237,314 | $243,722 | $250,802 |
| Office | $9,000 | $9,000 | $9,000 | $9,000 | $36,972 | $37,970 | $38,995 | $40,048 |
| Services | $200,000 | $200,000 | $200,000 | $200,000 | $821,600 | $843,783 | $865,565 | $889,963 |
| Total Payroll Expenses | $200,000 | $200,000 | $200,000 | $200,000 | $821,600 | $843,783 | $865,565 | $889,963 |
| **(TRUCK IRP ACCOUNT)** | | | | | | | | |
| Total PERMIT IFTA | $4,000 | $4,000 | $4,000 | $4,000 | $16,000 | $16,432 | $16,876 | $17,331 |
| Expense | $750 | $750 | $750 | $750 | $3,081 | $3,164 | $3,250 | $3,337 |
| Rent | $21,000 | $21,000 | $21,000 | $21,000 | $84,000 | $84,000 | $84,000 | $84,000 |
| Total Tolls | $21,000 | $21,000 | $21,000 | $21,000 | $86,268 | $88,587 | $90,989 | $93,446 |
| Travel | $500 | $500 | $500 | $500 | $2,064 | $2,109 | $2,166 | $2,225 |
| Total Expenses | $768,350 | $687,850 | $695,350 | $714,300 | $3,066,332 | $3,152,067 | $3,238,566 | $3,327,812 |
| Net Operating Income | $26,650 | $42,150 | $64,650 | $120,900 | $270,068 | $319,839 | $372,257 | $427,444 |
| Secured Equipment Payments | $75,000 | $75,000 | $75,000 | $75,000 | $300,000 | $300,000 | $300,000 | $300,000 |
| Net Disposable Income | -$48,350 | -$32,850 | -$10,350 | $45,900 | -$29,932 | $19,839 | $72,257 | $127,444 |
| Unsecured Creditor Payment | $17,500 | $17,500 | $17,500 | $17,500 | $70,000 | $70,000 | $70,000 | $70,000 |
| Celtic Bank | $6,858 | $6,858 | $6,858 | $6,858 | $27,432 | $27,432 | $27,432 | $27,432 |
| SBA | | | $2,100 | $2,100 | $8,400 | $8,400 | $8,400 | $8,400 |
| Priority/Gov't Payments | $6,000 | | | | | | | |
| Net Cash Balance | $395,292 | $339,084 | $304,376 | $325,918 | $198,554 | $120,961 | $95,796 | $125,793 |

EXHIBIT C. EQUIPMENT RELEASED

| Unit No. | Year | Make | Model | Vin | Creditors | Account |
|---|---|---|---|---|---|---|
| 6807 | 2018 | Utility Trailer | Reefer | 1UYVS2539J2076807 | BALBOA CAPITAL CORPORATION | BALBOA CAPITAL #356411-001 |
| 2214 | 2015 | Utility Trailers | Reefer | 1UYVS2539FM332214 | BALBOA CAPITAL CORPORATION | BALBOA CAPITAL #356411-004 |
| 2217 | | | | 1UYVS2534FM332217 | | |
| 2307 | | | | 1UYVS2535FM332307 | | |
| 2337 | | | | 1UYVS2533FM332337 | | |
| 6916 | 2024 | Utility Trailers | Reefer | 3UTVS2531R8006916 | BMO Harris Bank N.A. ISAOA | BMO # 9368591-001 |
| 6917 | | | | 3UTVS2533R8006917 | | |
| 6918 | | | | 3UTVS2535R8006918 | | |
| 6919 | | | | 3UTVS2537R8006919 | | |
| 6920 | | | | 3UTVS2533R8006920 | | |
| 6814 | 2018 | Utility Trailer | Reefer | 1UYVS2536J2076814 | THE HUNTINGTON NATIONAL BANK ISAOA | HUNTINGTON 001-0722601-500 |
| 6913 | 2018 | Utility Trailer | Reefer | 1UYVS2538J2076913 | THE HUNTINGTON NATIONAL BANK ISAOA | HUNTINGTON 001-0722601-501 |
| 6914 | | | | 1UYVS253XJ2076914 | | |

| Unit No. | Year | Make | Model | Vin | Creditors | Account |
|---|---|---|---|---|---|---|
| 722 | 2019 | Freightliner | CORONADO | 3ALXFB001KDK7810 | EVERBANK | RETURNED |
| 717 | 2015 | Freightliner | CORONADO | 3ALXFB001FDGD1349 | FALCON EQUIPMENT FINANCE | FALCON # 821-10026528-000 |
| 734 | 2005 | Kenworth | W 900 | 1XKWDB9X75J088190 | FALCON EQUIPMENT FINANCE | FALCON # 821-10026528-001 |
| 723 | 2018 | Freightliners | CORONADO | 3ALXFB000IDIU3892 | FIRST CITIZENS BANK & TRUST COMPANY | CIT #083-0011412-000 |
| 720 | 2018 | Freightliner | CORONADO | 3ALXFB00XIDJP9511 | MERCEDES-BENZ FINANCIAL SERVICES USA LLC | DAIMLER 500206136001 |
| 725 | 2017 | Freightliner | CORONADO | 3ALXFB000HDJG1282 | MIDLAND EQUIPMENT FINANCING | MIDLAND EQUIPMENT FINANCING |
| 721 | 2019 | Freightliner | CORONADO | 3ALXFB005KDK7809 | US BANK/FORMER BMO | BMO # 935034300 (US BANK) |
| 716 | 2018 | Freightliner | CORONADO | 3ALXFB009IDIT4060 | MERCEDES-BENZ FINANCIAL SERVICES USA LLC | DIAMLER 5001736524001 |